In the Matter of the Appraisal, under the Transfer Tax Act, of the Estate of FREDERICK COOK, Deceased.

THE COMPTROLLER OF THE STATE OF NEW YORK, Appellant and Respondent; FREDERICK C. MACDONELL et al., Respondents and Appellants.

1. TRANSFER TAX — RATE NOT AFFECTED BY ASSIGNMENT OF LEGACY. A succession tax is measured by the legal relation which the legatee bears to the testator, and is not affected by the relation which an assignee of the legatee bears to him.

2. SAME. Legacies to nephews and nieces, assigned by them to testator's widow for a valuable consideration and in settlement of a contest of the will instituted by her, pass, not under the will, but by virtue of the assignment; the widow takes them as assignee, not as legatee; they are taxable, therefore, under the Transfer Tax Act (L. 1896, ch. 908, §§ 220–242) at the rate of five per cent, as in the case of a bequest to nephews and nieces; not at the rate of one per cent, as in the case of a bequest to a widow.

3. LEGACY TO CHILD OF ADOPTED DAUGHTER. A legacy to the son of an adopted daughter is taxable at the same rate as if his mother had been the natural child of the testator, i. e., one per cent; since the Domestic Relations Law, relating to the effect of the adoption of children (L. 1896, ch. 272, § 64), gives to an adopted child the same legal relation to the foster parent as a child of his body, and that relation extends to the heirs and next of kin of the child by adoption the same as to those of a child by nature.

4. CONSTRUCTION OF PHRASE "LINEAL DESCENDANT" — TAX LAW (L. 1896, CH. 908), § 221. The fact that the statute dealing with exemptions from the succession tax (Tax Law [L. 1896, ch 908], § 221), while it exempts adopted children to the same extent as natural children, does not mention their heirs and next of kin, and, in describing the exempt

class, makes use of the phrase " or any lineal descendant of such dece-
dent," does not deprive the heirs and next of kin of adopted children of
the benefit of the exemption, since the words " lineal descendant " must
be read in connection with the statute governing the effect of adoption,
which makes the child by adoption and his heirs the same in every
respect, affecting inheritance or succession, as an actual child and his
heirs. In the eye of the law, therefore, adopted children are lineal
descendants of their foster parent. They are in the line of descent from
him through the command of the statute, the same as if that line had
been established by nature. The legislature created the relation and
extended to it the right of inheritance, not only as between the foster
parent and the adopted child, but also as between the children of the
adopted child and the foster parent.

*Matter of Cook*, 114 App. Div. 718, reversed.

(Argued January 7, 1907; decided January 22, 1907.)

CROSS-APPEALS from an order of the Appellate Division of
the Supreme Court in the fourth judicial department, entered
July 12, 1906, which modified and affirmed as modified an
order of the Monroe County Surrogate's Court assessing a
transfer tax on the estate of Frederick Cook, deceased.

This proceeding was instituted to ascertain and determine
the amount of a succession tax under the following facts:
Frederick Cook, late of the city of Rochester, died on the
17th of February, 1905, leaving a widow, but no child of his
body and no descendant of any deceased child. He left,
however, Fredericka Louise MacDonell, a daughter duly
adopted according to the laws of this state, and Frederick
Cook MacDonell, her only child. He disposed of his large
estate by a last will and testament, of which only two
paragraphs are now material.

By the eleventh paragraph he gave $50,000 to his execu-
tors in trust for his " grandson, Frederick Cook MacDonell,"
with directions to accumulate the income until he should
become fifteen years of age, and thereafter to pay him the
annual income from the aggregate until he should become of
full age, and then to pay him the amount of the accumula-
tions, together with the annual income from the balance until
he should reach twenty-five, when one-half of the principal

was to be paid over and the remainder when he should
become thirty. In case of his death before all of the fund
was paid over, the remainder was to go to his wife and
children, if he left any, and if he left none it was to be paid
over to the residuary legatees named in the thirty-eighth
clause.

By the thirty-eighth paragraph the residue of his estate was
given to various nephews and nieces.

When the will was offered for probate, the widow and
adopted daughter filed objections which raised an issue as to
testamentary capacity. Pending the trial a compromise was
arrived at, which was carried into effect by certain instru-
ments executed by the widow and by each of the residuary
legatees, whereby for a good and sufficient consideration they
duly and formally assigned, transferred and set over to her
all their " right, title and interest in and to any part of the
residuary estate of said Frederick Cook and all rights accruing
to " them and each of them " by virtue of the provisions
of said. paragraph number thirty-eight of said last will.''
Thereupon the objections to probate were withdrawn and the
will was proved. The compromise agreements have been
duly kept and performed by all the parties thereto. If the
litigation had proceeded and the contestants had prevailed,
the entire estate of the testator would have gone to the widow
and adopted daughter. The settlement was made in good
faith for the sole purpose of avoiding a contest, and not to
reduce the transfer tax.

After finding these facts, in substance, the appraiser found
as conclusions of law that the bequest to Frederick Cook
MacDonell should be taxed at five per cent, which amounted
to $2,500, and that the entire residuary estate should be taxed
at the same rate, which amounted to $25,223.38. Upon
appeal to the surrogate this determination was affirmed, but
upon appeal to the Appellate Division it was reversed by a
divided vote as to the tax on the residuary estate, which was
fixed at the rate of one per cent, amounting to $8,924.67, and
affirmed as to the tax on the legacy to Frederick Cook

MacDonell.    The state comptroller appealed from the modification of the surrogate's decree, and the executors and Frederick Cook MacDonell from the entire order.

*Merton E. Lewis* and *William T. Plumb* for state comptroller, appellant and respondent.    The entire residuary estate created by Mr. Cook's will is taxable at the rate of five per cent. (*Matter of Wolfe*, 89 App. Div. 349; *Matter of Edson*, 38 App. Div. 19; *Amherst College* v. *Ritch*, 151 N. Y. 282; *Greenwood* v. *Holbrook*, 111 N. Y. 465.)    The legacy to Frederick Cook MacDonell was property taxed at five per cent. (*Matter of Moore*, 90 Hun, 162; *Matter of Deutsch*, 107 App. Div. 192; *Tompkins* v. *Verplanck*, 10 App. Div. 572; *Hanlin* v. *Osgood*, 1 Redf. 409; *N. Y. L. Ins. & Trust Co.* v. *Viele*, 161 N. Y. 11; *Matter of Hopkins*, 43 Misc. Rep. 464; *Matter of Cramer*, 170 N. Y. 271; *Johnson* v. *Brasington*, 156 N. Y. 181; *Mitchell* v. *Thorne*, 134 N. Y. 536; *Comm.* v. *Nancrede*, 32 Penn. St. 389.)

*Charles Van Voorhis* for Barbara Cook et al., respondents and appellants.    It was error to tax the transfer to Frederick Cook MacDonell at five per cent. (*Gillam* v. *G. T. Co.*, 186 N. Y. 127; *Simmons* v. *Burrell*, 8 Misc. Rep. 388; *Von Beck* v. *Thomsen*, 44 App. Div. 373; 167 N. Y. 601; *Dodin* v. *Dodin*, 16 App. Div. 42; 162 N. Y. 635; *Kemp* v. *N. Y. P. Exchange*, 34 App. Div. 178; *Power* v. *Hapley*, 4 S. W. Rep. 683; *Vidal* v. *Commagere*, 13 La. Ann. 516; *Humphreys* v. *Davis*, 100 Ind. 274; *Matter of Miller*, 45 Hun, 244; *Matter of Butler*, 58 Hun, 400.)    The residuum of the estate, with the exception of $97,000, was properly taxed at one per cent. (*Matter of Wolfe*, 89 App. Div. 349; *Greenwood* v. *Holbrook*, 111 N. Y. 465.)

VANN, J.    By the appeal of the comptroller the question is presented whether the transfer tax upon the residuary estate should be at the rate of one per cent, as fixed by the Appellate Division, or five per cent, as fixed by the surrogate.

The tax was reduced, upon the theory that the compromise was a renunciation by the residuary legatees of their interest in the residuary estate, and this conclusion was reached in reliance upon the recent case of *Matter of Wolfe* (89 App. Div. 349; 179 N. Y. 599).

In that case the testator had bequeathed to the persons nominated as executors the sum of $20,000 for their own use. After his death those legatees, called for convenience the executors, by an appropriate instrument duly renounced and released said bequest, so that the amount given to them fell into the residuary trust for the benefit of the testator's children and their descendants. The executors, instead of accepting the legacy given to them, absolutely refused to accept it by a formal instrument of renunciation. It was held that the legacy was not subject to a tax calculated at the rate at which it would have been taxable if it had been actually accepted by the original legatees, but at the rate at which it would have been taxable if the will had originally provided that it should pass to the residuary legatees. This conclusion was reached upon the ground that the Transfer Tax Act does not provide that an attempted transfer by a bequest which is refused by the beneficiary, should be taxed the same as if it were accepted; that the tax was on the succession and not upon the property; that an intended beneficiary has the right to refuse a gift, "and if a testamentary bequest is refused, the voluntary relinquishment of the donation by the legatee leaves nothing to be taxed unless it be the ultimate transfer of property under the will as necessitated by the relinquishment." No opinion was written by this court in that case, but the learned justice who wrote for the Appellate Division very appropriately said: "If no transfer is effected because it turns out that there is no property to transfer, no tax can be collected, and if the legatee renounce the gift and refuse to receive it, no tax can be collected with respect to him, because there has been no transfer to him. His right to renounce the privilege of accepting the donation is not denied or forbidden by the statute, and such right is

17

recognized by the authorities. * * * On his effective renunciation the title to or ownership of the property of the gift remains in the estate to be disposed of under the terms of the will and the succession is taxable in accordance with the nature of the ultimate devolution. * * * Assuming the right of an individual to reject proffered bounty, whether tendered by deed to take effect at the grantor's death, or by will, I can see no good reason for applying the provisions of the tax law to a mere abortive attempt at a transfer as well as to the consummated act."

We adhere to that decision, but are unable to see that it applies to the case before us. In that case there was no transfer by will to the executors, because in accordance with their undoubted right they refused to accept the legacy. No person can be compelled to accept a gift from a living person or by the will of a decedent unless, possibly, by his creditors if he is insolvent. Neither the gift nor the bequest is effective as a transfer until it is accepted, for acceptance is as essential as the offer. In the *Wolfe* case, therefore, there was no transfer by will to the executors, but the amount that would have gone to them if they had not renounced it passed under another clause of the will the same as if the executors had died before the testator. It was properly held, therefore, that no tax could be imposed upon the attempted transfer to the executors because the attempt was not successful, but that it should be imposed upon the only effective transfer which was through the residuary clause.

The facts in the present case are utterly different in their nature and in the legal effect thereof. Here the transfer of the residuary estate was to the residuary legatees named in the will. They neither renounced nor refused to accept. On the contrary, they accepted the bequest, not in express terms, but by necessary implication, for they transferred the same to the widow who accordingly took the residuary estate not through transfer by the will, but through transfer by the assignment. While they could renounce they could not assign without accepting. The testator gave the residuum to his

nephews and nieces and they sold it to the widow, who paid a large sum of money therefor. Upon the final settlement of the estate the decree will naturally adjudge that the residuary legatees took the residuum, but that the widow is entitled to it because they transferred it to her. They did not renounce or release to the estate but transferred to her, the same as they might have transferred to a stranger. She took solely by transfer from them and not by any transfer to her by virtue of the will. Her husband did not bequeath his residuary estate to her, but to them. That estate vested in some one at the exact moment when he died, subject to the right of refusal by the legatee, and it did not then vest in her, for her name is not mentioned in the residuary clause. Her first and only connection with the residuum is through the several assignments executed to her for a consideration, the sufficiency of which is not disputed, whereby each residuary legatee did thereby "assign, transfer and set over unto Barbara Cook, widow of the said Frederick Cook, deceased, all my right, title and interest in and to any part of the residuary estate of said Frederick Cook and all rights accruing to me by virtue of the provisions of said paragraph number thirty-eight of said last will."

The compromise did not change the will. No settlement could change a word that the testator wrote. The will stands as it was written, and the most solemn instrument, executed by all parties interested, could not convert a bequest to the nephews and nieces into a bequest to the widow. As we said in another case, she takes under them "by contract, not under the will or from the testator." (*Greenwood* v. *Holbrook*, 111 N. Y. 465, 471.) A succession tax is measured by the legal relation which the legatee bears to the testator and is not affected by the relation which an assignee of the legatee bears to him. Here the legatees took the residuum under the will. They succeeded the testator in the ownership thereof and their succession gives rise to the tax. The widow did not take the residue from the testator, for he did not give it to her. She took as assignee, not as legatee. Unless she took as assignee,

she did not take at all. The legatees assigned to her and the rate of taxation is fixed by their relation to the testator. As she did not take through the will, the succession tax cannot be fixed at the rate of one per cent, as in the case of a bequest to a widow, but must be fixed at the rate of five per cent, as in the case of a bequest to nephews and nieces.

The appeal by the executors and Frederick Cook Mac-Donell presents the question whether succession through the bequest of a foster parent by the descendant of an adopted child is to be taxed at the rate of one per cent or five.

As we have said, the measure of a succession tax under a will is the legal relation borne by the legatee to the testator. The legal relation is the one established by law, and, while it usually follows the natural relation, it does not in all cases. Thus the relation of an adopted child to the foster parent is created by statute and nature has nothing to do with it. The legislature has supreme control of the subject and may give heritable blood when nature did not. The question is, therefore, what relation is created by statute between the descendant of an adopted child and the foster parents with reference to the subject of succession to property? We find the answer in the Domestic Relations Law, which, in section 64, entitled " effect of adoption," provides as follows : " The foster parent or parents and the minor sustain toward each other the legal relation of parent and child and have all the rights, and are subject to all the duties of that relation, including the right of inheritance from each other, * * * and such right of inheritance extends to the heirs and next of kin of the minor, and such heirs and next of kin shall be the same as if he were the legitimate child of the person adopting * * *." The exceptions and limitations which appear in the statute are not now material.

Thus the statute gives to an adopted child the same legal relation to the foster parent as a child of his body, and that relation extends to the heirs and next of kin of the child by adoption the same as to those of a child by nature. The artificial relation is given the same effect as the actual relation,

so far as the right of succession is concerned, and the statutory
grandchild and grandparent inherit from each other the same
as if the relation had been created by nature. In other
words, the legislature has ordained that there shall be no dif-
ference in the right to inherit between a child by adoption
and his heirs and next of kin and a child by nature and his
heirs and next of kin, and the courts, as in duty bound, have
obeyed the command. (*Dodin* v. *Dodin*, 16 App. Div. 42;
162 N. Y. 635; *Von Beck* v. *Thomsen*, 44 App. Div. 373;
167 N. Y. 601; *Gilliam* v. *Guaranty Trust Co.*, 186 N. Y.
127.)

The Tax Law, in dealing with the subject under the head
of exemptions, is less specific, for, while it exempts adopted
children to the same extent as natural children, it does not
mention their heirs and next of kin, and in describing the
exempt class it makes use of the phrase "or any lineal
descendant of such decedent." (§ 221.) The Appellate Divi-
sion, in rendering judgment, seem to have been controlled by
the words "lineal descendant," but they must be read in con-
nection with the statute governing the effect of adoption.
That effect, as we have seen, is to make the child by adoption
and his heirs the same in every respect, affecting inheritance
or succession, as an actual child and his heirs. The natural
relation and the statutory relation are made one and the same
as to the devolution of property. If the legislature could do
this, it has done it and it is not denied that it could do it.

A lineal descendant is one who is in the line of descent
from a certain person, but, since the Domestic Relations Law
went into effect, not necessarily in the line of generation.
The line of descent is the course that property takes accord-
ing to law when the owner dies. By force of the statute that
course is the same in the case of adopted children that it is in
the case of own children. In the eye of the law, therefore,
adopted children are lineal descendants of their foster parent.
They are in the line of descent from him through the com-
mand of the statute, the same as if that line had been estab-
lished by nature. The legislature created the relation and

extended it to the right of inheritance, not only as between the foster parent and the adopted child, but also as between the children of the adopted child and the foster parent.

We think that the right of succession by Frederick Cook MacDonell was subject to taxation at the same rate as if his mother had sprung from the loins of the testator.

The order of the Appellate Division should be reversed and the decree of the surrogate modified by reducing the succession tax upon the legacy to Frederick Cook MacDonell from the sum of $2,500 to the sum $500, and as thus modified, said decree is affirmed, without costs in any court to any party.

Cullen, Ch. J., Edward T. Bartlett, Haight, Werner, Willard Bartlett and Hiscock, JJ., concur.

Ordered accordingly.